UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDRE C. McGIRT,

Applicant,

v. CASE NO. 8:11-cv-2858-T-23JSS

SECRETARY, Department of Corrections,

Respondent.
_________________________________/

**O R D E R**

McGirt applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions on forty-five counts of RICO, burglary, grant theft, and various forms of forgery, for which convictions McGirt is imprisoned for life. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 7) The respondent admits the application's timeliness. (Response at 3, Doc. 7)

**FACTS**[1]

With the goal of stealing checks and credit cards, McGirt established a criminal enterprise comprising himself, his wife (Jennifer McGirt), and other members of his wife's family. The enterprise committed (1) a series of car burglaries outside of churches and daycare facilities and (2) a home burglary. The members of the enterprise were charged with cashing forged checks and using stolen credit cards. The

[1] This summary of the facts derives from McGirt's brief on direct appeal. (Respondent's Exhibit 5 at 9–12)

trial lasted eight days and involved more than thirty witnesses. The evidence established crimes against (1) Heather Jo Brown, whose car was burglarized and her purse was stolen after she parked outside of a daycare center on June 1, 2004; (2) Toni Walsh, whose car was burglarized and whose purse was stolen when she took her son to kindergarten on August 17, 2004; (3) Christina Ann McDowell, whose car was burglarized and whose purse was stolen when she and her husband went to their children's school for a birthday party on August 20, 2004; (4) Judith Crowley, whose car was burglarized and whose baby bag (containing her purse, wallet, and cell phone) was stolen when she dropped-off her daughter at her pre-kindergarten school on September 10, 2004; (5) Jack Blanchard, whose Pinellas Park home was burglarized as he slept and whose roommate's pants and wallet were stolen on September 13, 2004; (6) Gail O'Conner, whose car was burglarized and whose purse was stolen while she was teaching tennis to children on September 14, 2004; and (7) Marsha McArthur, whose car was burglarized and whose purse was stolen while she was attending a church funeral dinner on September 17, 2004.

Law enforcement investigators identified Andre and Jennifer McGirt as possible suspects. While conducting an undercover surveillance, the police observed the McGirts commit the McDowell burglary. The police arrested the couple after following the McGirts to their home. Because she was on probation when arrested, Jennifer McGirt remained in jail. Andre McGirt was released on bond. While Jennifer McGirt was in jail, the police monitored telephone conversations between

Andre McGirt and her. The monitoring produced incriminating evidence against Andre McGirt.

Andre and Jennifer McGirt were charged in a fifty-count information with (1) violating Florida's Rico statute; (2) committing many burglaries, thefts, and forgeries; (3) uttering forged checks; and (4) using stolen credit cards. Jennifer McGirt testified against Andre McGirt in exchange for a favorable plea agreement. The state's evidence against McGirt consisted primarily of testimony from Sonya West, William Reynolds, Alfonso Williams, Michelle Gramling and Jennifer McGirt, who were members of the enterprise. The prosecution introduced photographs and surveillance recordings from Wal-Mart and K-Mart. The recordings showed both McGirt with some of the above-identified members of the enterprise soon after several of the burglaries and some members of the enterprise using stolen credit cards to purchase or attempt to purchase merchandise. Neither this evidence nor the testimony of some of the store cashiers showed that McGirt himself used a stolen credit card at the stores. Similarly, no burglary victim was able to identify who committed the relevant burglary, and no bank teller was able to identify McGirt as cashing a forged check. The prosecution withdrew four of the counts before trial. The jury convicted McGirt of forty-five counts and acquitted on one count.

Andre McGirt's defense was (1) that the evidence showed no involvement in racketeering, (2) that no money trail connected him to the stolen items, and (3) that the physical evidence, including surveillance tapes and photographs, did not show

him committing a crime. McGirt argued that all of the testimonial evidence against him came from his wife and her family, who were biased against him because of self-interest and racial animus (Jennifer McGirt is Caucasian and Andre McGirt is African-American).

McGirt's state motion for post-conviction relief was summarily denied without an evidentiary hearing because the court determined that each claim was refuted by the record. The state court correctly rejected McGirt's claims of ineffective assistance of counsel because McGirt, as the leader of the criminal enterprise, is liable for an act by a member of his enterprise if the act was in furtherance of the enterprise. Most of McGirt's grounds for relief in his Section 2254 application show a misunderstanding about a principal's liability for an act by a participant in a criminal enterprise. This misunderstanding undermines much of his application.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed McGirt's convictions and sentence. (Respondent's Exhibit 7) Similarly, in another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of McGirt's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 16) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. McGirt bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of McGirt's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 14)

**INEFFECTIVE ASSISTANCE OF COUNSEL**

McGirt claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

> deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

McGirt must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, McGirt must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. McGirt cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

McGirt must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, ___ U.S. ___, 134 S. Ct. 191 (2013).

In summarily denying McGirt's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 14 at 2) Because the state court rejected the claims based on *Strickland*, McGirt cannot meet the "contrary to" test in Section 2254(d)(1). McGirt instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal

application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One:**

McGirt alleges that trial counsel rendered ineffective assistance by not investigating, deposing, and calling as a witness Eugene McGirt (a brother of McGirt), whom he alleges would have testified to having forged the check stolen from Gail O'Connor. Based on a misunderstanding about the law of principals, McGirt argues that his brother's testimony (that the brother forged the check) would have refuted the prosecution's evidence that a state witness saw McGirt forge the check. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 2–5) (citations to record omitted) (brackets original):

> The Defendant first alleges that he was denied effective assistance of counsel due to counsel's failure to investigate, interview, depose and call Eugene McGirt as a witness. The Defendant alleges that Eugene McGirt contacted counsel prior to trial and informed him that he "had written both checks and would submit a copy of the written information on the check(s) for analysis to support that fact." The Defendant contends that he told counsel that Eugene McGirt's testimony would have "refuted the testimony of State's witness Alphonzo Williams that he 'witnessed the Defendant sign [victim Gail O'Connor's name to] the checks.'" The Defendant states that there is a strong probability that the outcome of the trial would have been different had Alfonso Williams testified.

. . .

Preceding trial, the court asked the Defendant whether he would be inquiring of any defense witnesses at trial. The Defendant stated that he had discussed calling witnesses with counsel and that none would be called. Furthermore, the Defendant specifically stated that he had not asked counsel to locate any witnesses preceding trial. In fact, during a bench conference on August 10, 2007, the State affirmed that prior to trial, counsel and the State had discussed that Eugene McGirt had been making threats to Alfonso Williams. Thereafter, upon the close of the State's case, the Defendant represented to the court that he had asked counsel to locate witnesses that had not been located. The Defendant stated that he was happy with counsel's attempts to locate witnesses and, moreover, that he did not want to call any witnesses or present any evidence on his behalf.

Additionally, as noted above, the Defendant was charged with 50 counts including burglary; grand theft; uttering forged bills, checks, drafts or notes; fraudulent use of personal identification information; violation of racketeer influenced and corrupt organization act; forgery of bank bills, checks, drafts, or promissory notes; fraudulent use of a credit card; and forgery. Following an eight-day jury trial, the Defendant was found guilty of forty-five counts of the aforementioned offenses. In Ground One of his motion, the Defendant appears to challenge specifically the testimony of Alfonso Williams pertaining to Count 34 (grand theft), Count 35 (forgery of bank bills, checks, drafts or promissory notes), and Count 36 (uttering forged bills, checks, drafts or notes) regarding victim Gail O'Connor.

The failure to call witnesses can constitute ineffective assistance of counsel if the witnesses may have been able to cast doubt on the Defendant's guilt. *Sulley v. State*, 900 So. 2d 596 (Fla. 2d DCA 2004). If a defendant's motion for post-conviction relief presents a facially sufficient claim for ineffective assistance of counsel for failure to call witnesses, a defendant is entitled to an evidentiary hearing unless the record conclusively refutes his claim. *Ford v. State*, 825 So. 2d 358 (Fla. 2002).

The Defendant was charged as a principal in the first degree in every count of the information. §777.011, Fla. Stat. (2004). As a principal in the first degree, whoever aids, abets, counsels, hires, or otherwise procures an offense to be committed, and the

offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense. *Staten v. State*, 519 So. 2d 622 (Fla. 1988); *State v. Reid*, 886 So. 2d 265 Fla. 5th DCA 2005) ("Under statute defining principals in the first degree, no distinction is made between those who are the brains of the crime and those who are the arms of the crime.").

Aside from Alphonso Williams' testimony that the Defendant signed Ms. O'Connor's name to the checks, Mr. Williams also testified that the Defendant presented the check to him and drove him to multiple locations in order to cash the check. In exchange, Mr. Williams testified that he received a portion of the proceeds. Ms. O'Connor testified that she recognized the check as her own; however, she did not know anyone by the name of Alfonso Williams or Andre McGirt. Furthermore, she testified that she did not make out the check to Alfonso Williams nor did she authorize anyone to do so.

Michelle Gramling[2] and Jennifer McGirt . . . testified to the systematic manner in which the Defendant organized and orchestrated the various offenses. Ms. Gramling testified that she made credit card purchases using Ms. O'Connor's credit cards, forging the victim's name. Ms. Gramling further testified to how she was instructed by the Defendant to forge the victim's checks using a typewriter.

Co-Defendant Jennifer McGirt also testified to the manner in which the offenses were conducted and the Defendant's role in carrying them out. Ms. McGirt testified in detail as to the offenses for which the Defendant was charged. Additionally, incriminating audio tapes of conversations that Ms. McGirt had with the Defendant from the Pinellas County Jail were played at trial. In these tapes, the Defendant revealed his participation in the offenses of which he was convicted.

Dwight Reynolds [(a cousin of Jennifer McGirt)] testified to driving around with the Defendant, parking next to Ms. O'Connor's vehicle, and watching the Defendant remove her purse from the vehicle. Mr. Reynolds testified that the Defendant instructed Ms. Gramling to use a computer to fill out the check taken from Ms. O'Connor's vehicle.

[2] The fiancee of William Reynolds, who is a cousin of Jennifer McGirt.

> Sonya West [(a cousin of Jennifer McGirt)] also testified to the Defendant asking her to cash a check, the surreptitious manner in which it was attempted, and the defendant's role in the process.
>
> Because the Defendant was convicted as the principal to the various offenses, it was immaterial to prove that the Defendant personally executed the falsified check bearing Ms. O'Connor's signature. As demonstrated by the ample evidence presented at trial and cited above, the Defendant was convicted as a principal in the first degree. Based upon the foregoing, counsel cannot be deemed ineffective for failing to investigate, interview, depose and call Eugene McGirt as a witness. Ground One is denied.

The post-conviction court rejected this claim because, whether McGirt, as the leader of the enterprise and as a principal, or his brother forged the check is irrelevant to McGirt's liability for the crime because he is liable for any act committed in furtherance of the enterprise. McGirt argues that his convictions, based on his liability as a principal, are invalid because the information did not charge him as a principal. Under Florida law the information need not designate that the defendant is charged as a principal. "[A] person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute." *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971). *See Hodge v. State*, 970 So. 2d 923, 927 (4th DCA 2008) (quoting *Roby*). *See also State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) ("Under Florida law, a person who is charged in an Indictment or Information with commission of a crime may be convicted on proof that she aided or abetted in

the commission of such crime.") (citations omitted). As a consequence, the post-conviction court reasonably applied *Strickland* by determining that trial counsel was not ineffective for not investigating, deposing, and calling Eugene McGirt. McGirt is entitled to no relief under ground one.

**Ground Two:**

McGirt alleges that trial counsel rendered ineffective assistance by not investigating, consulting, and presenting the testimony of a handwriting expert even though McGirt gave counsel sufficient money to hire an expert. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 6) (citations to record omitted):

> The Defendant next claims that counsel was ineffective for failing to "investigate, consult with, and present expert testimony in the area of handwriting analysis." The Defendant claims that the handwriting expert would have corroborated the testimony of Eugene McGirt [(that he and not the defendant signed the O'Connor check)] and would have discredited the testimony of Alfonso Williams [(that McGirt signed the check)].
>
> As noted above, the Defendant was convicted as a principal in the first degree to the numerous offenses with which he was charged. Therefore, there was no need for the State to prove that the Defendant personally executed the falsified checks. Instead, as documented above, ample evidence was presented at trial showing that to varying degrees, the Defendant aided, counseled, and directed his coconspirators in carrying out the multitude of offenses for which he was ultimately convicted. Because the Defendant has failed to show how he was prejudiced through counsel's failure to call a handwriting expert, Ground Two is denied.

For the reasons stated under ground one, the post-conviction court reasonably applied *Strickland* by determining that McGirt proved no deficient performance

because McGirt, as a leader of the enterprise and principal, is liable for an act committed in furtherance of the enterprise. McGirt is entitled to no relief under ground two.

**Ground Three:**

McGirt alleges that trial counsel rendered ineffective assistance by not investigating, deposing, and presenting the testimony of Virginia Vanhoose (Jennifer McGirt's grandmother) and asserts that her testimony would establish that McGirt was financially secure and without the need to commit the charged crimes. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 6–7) (citations to record omitted):

> The Defendant next alleges that counsel was ineffective in failing to investigate, interview, depose, and call Virginia Vanhoose as a defense witness.
>
> The Defendant avers that on July 7, 2006, he informed counsel that from August 21, 2004, until his arrest on October 1, 2004, that he had resided at the residence of Ms. Vanhoose. The Defendant claims that Ms. Vanhoose had taken out a reverse mortgage on her home to financially assist the Defendant and co-defendant Jennifer McGirt. The Defendant claims that recorded statements would have clearly established that the Defendant was financially stable and would have undercut the State's theory that the Defendant committed the offenses to obtain money for the "Jennifer McGirt Defense Fund."
>
> The record reveals that Ms. Vanhoose was listed as a witness on the Defendant's April 5, 2006, "Second Amended Witness List and List of Tangible Evidence" and April 20, 2006, "Third Amended Witness List and List of Tangible Evidence." Furthermore, at an April 21, 2006, *Williams* Rule hearing counsel informed the court that Ms. Vanhoose was listed as a State witness and a defense witness, and that she was scheduled to have cataract surgery but she would be available to testify at

> trial. Additionally, on April 18, 2006, counsel filed a witness subpoena for Ms. Vanhoose.
>
> In addition to the testimony set forth in Ground One above, Detective Anthony Stevens and Officer Randall Jones testified that the Defendant provided a post-*Miranda* statement in which he denied doing daycare burglaries, however he stated that he told several people how to do vehicle burglaries at day cares, and he told them how to use the checks taken from the burglaries to obtain cash, and that he received payment from individuals that carr[y] out the burglaries because he told them how to do it.
>
> Based upon the testimony and evidence presented at trial, as stated above, it is dubious that counsel's failure to call Ms. Vanhoose as a witness prejudiced the defense. Additionally, preceding trial, the court asked the Defendant whether he would be inquiring of any defense witnesses at trial. The Defendant stated that he had discussed calling witnesses with counsel and that none would be called. Furthermore, the Defendant specifically stated that he had not asked counsel to locate any witnesses preceding trial.
>
> Thereafter, upon the close of the State's case, the Defendant represented to the court that he had asked counsel to locate witnesses that had not been located. The Defendant stated that he was happy with counsel's attempts to locate witnesses and, moreover, that he did not want to call any witnesses or present any evidence on his behalf. *Hall v. State*, 10 So. 3d 170 (Fla. 5th DCA 2009) ("A defendant may not claim his counsel was ineffective for failing to call witnesses when it was the defendant's decision not to call them."); *Thomas v. State*, 838 So. 2d 535, 541 (Fla. 2003) (affirming denial of ineffective assistance of counsel claim where trial court found that defendant agreed not to call a witness and thus, could not claim ineffective assistance of counsel based on his decision). Based upon the foregoing, Ground Three is denied.

*Strickland* requires proof of both deficient performance and consequent prejudice. The post-conviction court rejected McGirt's claim after determining that counsel did not perform deficiently. The court further determined that, based on McGirt's statements and the extensive incriminating evidence, McGirt failed to prove

that he was prejudiced by counsel's not investigating, deposing, and presenting the testimony of Virginia Vanhoose. Because he does not show that the post-conviction court unreasonably applied *Strickland*, McGirt is entitled to no relief under ground three.

**Ground Four:**

McGirt alleges that trial counsel rendered ineffective assistance by not impeaching Jennifer McGirt with her juvenile adjudication of a "prior check charge" to refute her testimony that McGirt taught her how to forge checks. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 8) (citations to record omitted):

> The Defendant next alleges that counsel was ineffective for failing to investigate and impeach State's witness Jennifer McGirt. More specifically, the Defendant alleges that counsel was ineffective for failing to investigate Jennifer McGirt and impeach her with "prior check charges as a juvenile." The Defendant alleges that these impeachable offenses would have refuted her testimony that the Defendant "taught her to do this."
>
> The Defendant specifically argues that counsel should have impeached Ms. McGirt for her "prior check charges as a juvenile." An offense that occurred while the witness was a juvenile, which was handled as a juvenile matter and resulted in a juvenile adjudication, is inadmissible for impeachment purposes. § 90.610(1)(b); *Rivers v. State*, 792 So. 2d 564, 566 (Fla. 1st DCA 2001); *Martin v. State*, 710 So. 2d 58, 59 (Fla. 4th DCA 1998). Because such convictions are inadmissible for the purpose of impeaching a witness, counsel cannot be deemed ineffective for failing to use the juvenile convictions to impeach Ms. McGirt. Ground Four is denied.

The post-conviction court determined that, as a matter of state evidentiary law, the juvenile adjudication was unusable for impeachment purposes. As a general

principle, an alleged violation of state law fails to assert a constitutional issue because the admissibility of evidence in a state trial is largely a matter for the state to decide without federal intervention. *See McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), *cert. denied*, 507 U.S. 975 (1993), and *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). Federal review is available only in extreme circumstances. "[I]t is normally 'within the power of the State to regulate procedures under which its laws are carried out,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Patterson v. New York*, 432 U.S. 197, 201–202 (1977). The post-conviction court reasonably applied *Strickland* by determining that McGirt proved no deficient performance because counsel could not use a juvenile adjudication to impeach Jennifer McGirt.

In his reply (Doc. 11) McGirt argues that the inability to impeach Jennifer McGirt violated his rights under the Confrontation Clause as interpreted in *Davis v. Alaska*, 415 U.S. 308 (1974). McGirt asserted no Confrontation Clause argument in his motion for post-conviction relief. Consequently, this argument is unexhausted.

An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). *See also Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.");

*Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999). Because McGirt shows no basis for overcoming the procedural default, federal review of ground four is procedurally barred.

**Ground Five:**

McGirt alleges that trial counsel rendered ineffective assistance by not objecting and moving for a mistrial based on the prosecutions knowing use of perjured testimony. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 8–10) (citations to record omitted):

> The Defendant further asserts that counsel was ineffective for failing to object and move for mistrial when the "State knowingly and willfully elicited false and perjured testimony at trial" regarding Count 34. More specifically, the Defendant argues that the State recalled Detective Robert Prescott to testify in regards to phone conversations he had recorded between Ms. McGirt and the Defendant, "wherein it was alleged that they were discussing how to cash two (2) checks belonging to a named victim, Gail O'Connor." The Defendant claims that because the telephone conversation about having cashed stolen checks occurred before the checks were cashed, that the testimony was false.
>
> The Defendant argues that this false testimony constitutes a *Giglio* violation. The Defendant cites *Giglio*, arguing that the prosecutor knew or should have known that the testimony was false. To show that a *Giglio* violation has occurred, "it must be shown that (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Ponticelli v. State*, 941 So. 2d 1073, 1088 (Fla. 2006).

In the portions of the trial transcript cited to by the Defendant, Officer Prescott testified to the contents of Pinellas County Jail telephone conversations between the Defendant and Ms. McGirt on September 14, 15, 16, and 18, 2004. Officer Prescott stated that the telephone conversations concerned a vehicle burglary occurring on September 14, 2005, involving victim Gail O'Connor. Officer Prescott stated that the September 14, 2004, phone call was significant because the Defendant related to Ms. McGirt that he had procured two checks as a result of the September 14, 2004, burglary. In a subsequent phone call on September 14, 2004, the Defendant mentions that the checks are a special type of commercial check. Additionally, the Defendant talked to Ms. McGirt regarding DVD purchases that he made with the victim's credit card. Officer Prescott testified that the DVD's that the Defendant bought were reflected on the victim's credit card receipt. Officer Prescott also testified that the checks that were taken from the victim's car matched those that the Defendant tried to cash.

Officer Prescott further testified to a telephone call on September 16, 2004, in which the Defendant and Ms. McGirt discuss using a typewriter to fill in the checks. As noted above, Ms. Gramling testified to how she was instructed by the Defendant to forge the victim's checks using a typewriter.

Officer Prescott testified that on September 18, 2004, Ms. McGirt called the Defendant and they discussed whether the check had been cashed and for how much. The Defendant responded that the check had been cashed for $1,250. Alfonso Williams testified that towards the end of September the Defendant approached him and asked him to cash a check in the amount of $1,250. Mr. Williams testified that he received $800 for cashing the check and the Defendant received $450. Mr. Williams stated that the Defendant drove him to multiple locations in order to cash the check until the endeavor was successfully completed at Ike's Liquor Store. An employee of Ike's Liquors, Ms. Cheritta McBride, testified that Ms. O'Connor's check was cashed on September 29, 2004. Therefore, it appears that the cashing of the $1,250 check occurred after the recorded telephone conversations to which Officer Prescott testified.

The Defendant has failed to show that the statement was material. The Defendant was charged as a principal in the first degree. Therefore, the Defendant could be convicted for aiding, abetting, counseling, hiring, or otherwise procuring an offense to

> be committed, and the offense is committed or is attempted to be committed. As noted above, Mr. Williams testified to the Defendant approaching him to cash the check. Additionally, Ms. Cheritta McBride testified to cashing Ms. O'Connor's check. Furthermore, Ms. O'Connor testified to not knowing Mr. Williams or the Defendant, and to not writing a check to either person. Mr. Reynolds testified to observing the Defendant break in and remove Ms. O'Connor's purse from her vehicle. Mr. Reynolds further testified that the Defendant instructed Ms. Gramling to use a computer to fill out the check taken from Ms. O'Connor's vehicle. Based upon the great deal of inculpatory evidence presented at trial, it cannot be said that Officer Prescott's statements were material. Therefore, Ground Five is denied.

The post-conviction court reasonably applied *Strickland* by determining that McGirt proved no prejudice. Once again, McGirt's claim is undermined by his misunderstanding about a principal's liability for an act by a participant in a criminal enterprise. Moreover, McGirt's *Giglio* claim is based on an unproven premise, specifically, that Detective Prescott testified falsely. Detective Prescott testified that during a monitored telephone conversation between McGirt and his wife McGirt stated that the Gail O'Connor check had been cashed. The conversation occurred on September 16th, however, the undisputed evidence proves that the check was not cashed until two days later. As a consequence, McGirt claims that Detective Prescott was lying about the telephone conversation. The undisputed evidence proves the falsity of the statement that the check had been cashed before the telephone conversation, but the evidence does not prove that Detective Prescott lied about the conversation. The evidence equally suggests that McGirt lied to his wife about

cashing the check. Because he does not show that the post-conviction court unreasonably applied *Strickland*, McGirt is entitled to no relief under ground five.

**Ground Six:**

McGirt alleges that trial counsel rendered ineffective assistance by not objecting and moving for a mistrial based on the prosecutor's misstatement of fact during closing argument. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 10–12) (citations to record omitted) (brackets original):

> The Defendant next alleges that counsel was ineffective for failing to object and "move for a mistrial and thereby preserve for appellate review when the State, during closing argument, argued/misstated facts not in evidence to bolster its theory of prosecution." The failure of trial counsel to properly preserve an issue for appeal may be properly cognizable in a rule 3.850 motion. *Daniels v. State*, 806 So. 2d 563 (Fla 4th DCA 2002). Under the *Strickland* prejudice prong, the movant "must show that had his counsel preserved the issues, [the appeals] court likely would have reversed his conviction on direct appeal." *State v. Chattin*, 877 So. 2d 747, 749 (Fla. 2d DCA 2004).
>
> The Defendant argues that neither Sean Minton nor Kara McGough identified the Defendant as the individual present when Ms. Gail O'Connor's credit cards were used at Shoe Carnival. However, the Defendant argues, the State asserted during closing argument that Ms. McGough and Mr. Minton testified that the Defendant, Mr. Dwight Reynolds, and Ms. Michelle Gramling made two separate purchases with Ms. O'Connor's credit cards. The Defendant argues that counsel should have moved for a mistrial because the State "interjected facts not in evidence to sway the jury since the testimony presented by Kara McGough and Sean Minton failed to identify the Defendant as a suspect."
>
> Mr. Minton, Shoe Carnival manager, testified that on September 14, 2004, two people came into the store, one white male and one black male. The two males purchased four or five pairs of shoes and left. Thereafter, they came back with a white female and purchased children's shoes. Mr. Minton identified the black

male as roughly six feet tall and weighing 170 pounds, the white male being five feet ten inches tall weighing 160 pounds with tattoos on his ankles, missing fingers, and a piercing through his lip. Mr. Reynolds testified to "clefting disease of the hands and feet." Mr. Minton identified the white female as five feet three inches tall and being "stocky." Mr. Minton recalled the individuals using a credit card bearing the name of Gail O'Connor.

Ms. McGough testified that on September 14, 2004, a white male and black male entered Shoe Carnival and used a credit card to purchase shoes. Ms. McGough testified that the white male made the actual purchase while the black male stood back about ten feet and watched the transaction. Ms. McGough testified that the white male had tattoos on his legs and was missing fingers. Additionally, she testified that Gail O'Connor's name was on the credit card used to execute the purchases. Ms. McGough stated that the two individuals then left the store and returned ten minutes later with a white female. The white female and white male approached and again used the Gail O'Connor credit card to execute the purchase. The black male stood back. Ms. McGough testified that the black male was "kind of scruffy" and wore "dirty white K-Swiss shoes on." Furthermore, she testified that he was "tall, pretty thin." She described the white female as about five feet four inches tall, and being a "little on the hefty side."

As noted above, the Defendant was charged and convicted as a principal in the first degree for 45 offenses. Ms. Gramling testified to using Ms. O'Connor's credit card at the Shoe Carnival. She stated that she watched the Defendant and Mr. Reynolds go into Shoe Carnival and purchase shoes. She testified that thereafter she accompanied the two men back into the store to purchase more shoes with the credit card. Mr. Reynolds also testified to watching the Defendant burglarize Ms. O'Connor's vehicle and thereafter use her credit card at Shoe Carnival. Ms. McGough testified that the black male was ordering the white male which shoes to purchase. Counsel did not object during the testimony of either Mr. Minton or Ms. McGough.

Based upon the testimony of the above-mentioned witnesses, the State merely pointed out in its closing an inference that could be drawn from the evidence of the Defendant's participation in the offenses. The State did not argue facts that were not in evidence

> or mischaracterize the evidence. *Skanes v. State*, 821 So. 2d 1102 (Fla. 5th DCA 2002). As such, Ground Six is denied.

The post-conviction court reasonably applied *Strickland* by determining that McGirt proved no deficient performance and the court's ruling is consistent with federal practice. Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While a prosecutor may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns,* 734 F.2d 657, 663 (11th Cir. 1984). Even if counsel's performance was deficient, McGirt shows no prejudice because he fails to show that the jury would have acquitted him if counsel had objected to the prosecutor's closing argument. Because he does not show that the post-conviction court unreasonably applied *Strickland*, McGirt is entitled to no relief under ground six.

**Ground Seven:**

McGirt challenges the cumulative effect of trial counsel's errors. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 12):

> Lastly, the Defendant claims that counsel rendered ineffective assistance through the cumulative errors described in the preceding grounds of his motion. This claim is without merit. All claims in this motion have been disposed of; therefore, the Defendant has failed to prove cumulative error. *Downs v. State*, 740 So. 2d 506 (Fla. 1999). Ground Seven is denied.

The post-conviction court's rejection of this claim is proper. McGirt can prove cumulative error only by showing two or more errors. "Without harmful errors, there

can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied* 469 U.S. 1158 (1985). *See Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution."). Because each individual claim of error lacks merit, McGirt cannot show cumulative prejudicial effect. *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."). The state court properly rejected each claim of ineffective assistance of counsel. As a consequence, cumulative error is not possible and McGirt is entitled to no relief under ground seven.

**Ground Eight:**

McGirt asserts entitlement to relief under *Giglio v. United States*, 405 U.S. 150 (1972), because the prosecutor knowingly used perjured testimony, specifically, the testimony of Detective Prescott as discussed in ground five. The post-conviction court denied this claim as follows (Respondent's Exhibit 14 at 12):

> In his supplemental motion, the Defendant alleges prosecutorial misconduct in "knowingly and willfully elicit[ing] false and thereby perjured testimony from a State's witness."
>
> Substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a post-conviction motion. *Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003). Consequently, Ground Eight of the Defendant's motion is denied.

The respondent argues that this ground is procedurally barred from federal review because, as the post-conviction court ruled, McGirt should have raised the claim on direct appeal. A petitioner requesting a federal court to issue a writ of habeas corpus must present each claim to the state courts in the procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The procedurally correct way to raise a claim of trial court error is on direct appeal.

Before a claim is procedurally barred from federal review, a state court must reject reviewing the claim based on the procedural deficiency. "[T]he mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: 'The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989), *quoting Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Also, the state court must state that it is enforcing the procedural rules. "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that its decision rests upon adequate and independent

state grounds." *Harris v. Reed*, 489 U.S. at 261, *quoting Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Consequently, citing to the state procedural rule and stating that the claim "could have been raised on direct appeal" or in some prior proceeding is insufficient. *Harris v. Reed*, 489 U.S. at 266. *See also Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."), *cert. denied*, 513 U.S. 1061 (1994). Consequently, the initial question is whether the state court issued a "plain statement" applying the independent and adequate state procedural bar. The state court's order contains a "plain statement" that invokes the state's procedural default rule and that declines to consider the claim based on the default rule, specifically, that the claim "could and should have been raised on direct appeal and thus [is] procedurally barred from consideration in a post-conviction motion." (Respondent's Exhibit 14 at 12) The post-conviction court's decision was summarily affirmed on appeal (Respondent's Exhibit 16), which decision is entitled to deference. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's *per curiam* affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts."). Consequently, federal review of ground eight is procedurally barred.

In his "Notice of Supplemental Authority" (Doc. 12) McGirt cites a state court decision that permits raising a *Giglio* claim post-conviction and that reverses a post-conviction court's rejection of the claim as procedurally defaulted. The review of McGirt's Section 2254 application is governed by the state court decisions issued in his criminal proceedings, not state court decisions issued in an unrelated proceeding. Moreover, the case McGirt cites is distinguishable because the alleged falsity of Detective Prescott's testimony is not based on the post-trial discovery of a fact. The discrepancy between when the check was supposedly cashed and when it was actually cashed was apparent on the face of the record.

Nevertheless, the claim lacks merit. Detective Prescott testified that, during a monitored telephone conversation between McGirt and his wife, McGirt stated that the Gail O'Connor check had been cashed, but the undisputed evidence proves that the check was not cashed until two days later. As determined in ground five, the undisputed evidence proves the falsity of the statement that the check had been cashed before the telephone conversation, but the evidence does not prove that Detective Prescott lied about the conversation. The evidence equally suggests that McGirt lied to his wife about cashing the check. As a consequence, McGirt does not prove that a *Giglio* violation occurred.

**CONCLUSION**

To summarize, McGirt fails to meet his burden to show that the state court's decision was an unreasonable application of controlling Supreme Court precedent or

an unreasonable determination of fact. *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recently recognized that this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, McGirt's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against McGirt and close this case.

**DENIAL OF BOTH**
**A CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

McGirt is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, McGirt must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, McGirt is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. McGirt must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on October 14, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE